UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY G. DENTON, | No. C 13-1374 SI (pr) |
| Plaintiff, | **ORDER OF DISMISSAL** |
| v. | |
| C/O BALA; et al., | |
| Defendants. | |

## INTRODUCTION

Barry G. Denton, currently an inmate at the California State Prison - Sacramento, filed this *pro se* civil rights action under 42 U.S.C. § 1983 to complain about events at Salinas Valley State Prison, where he previously was incarcerated. His complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

Denton alleges in his complaint that he tripped and fell while descending stairs and continues to have back problems from the fall. The complaint alleges the following:

On March 29, 2012, Denton was housed in a cell on the second tier of a housing unit that was on lockdown at Salinas Valley State Prison. Correctional officer ("C/O") Bala came to the cell door to ask if Denton and his cellmate wanted to shower. They said they did, but Denton stated that he should be able to shower free of restraints and an escort because he was not a gang member. C/O Bala disagreed, and said he was marked as a "crip" on the board. This classification was a mistake, and was later corrected to show that Denton was non-affiliated.

They argued, but eventually Denton and his cellmate were handcuffed behind their backs and exited their cell. According to a plan of operation for the facility then in place, the inmates were to be escorted to showers, and the policy was "one inmate per shower - own tier." Docket # 1-2, p. 2. C/O Bala escorted the cellmate's arm to take him to a shower on the second tier, and ordered Denton "to proceed to the downstairs shower, without an escort, where Defendant McClean waited, adjacent to the lower tier shower on the dayroom floor." Docket # 1, p. 9.

Restrained inmates were supposed to be moved under escort, according to prison policy. The policy attached to the complaint that shows this policy states that during all escorts of inmates in restraints, "one of the escorting staff will maintain physical control of the inmate. The staff member will physically hold the inmate at the upper arm area. *The physical hold will allow the escorting officer to immediately apply physical force should the inmate attempt to resist the escort."* Docket # 1-4, p. 2 (emphasis added). The policy does not state that the physical control was to protect inmates from slip-and-falls.

When told to walk down to the first floor, Denton told Bala and McClean, "'y'all want me to walk down these damn steps handcuffed with my bad knee? I might fall on my face.'" Docket # 1, p. 9. C/O Bala "responded in part, 'Denton, you're in better shape than me,' while he (Defendant Bala) and Plaintiff's cellmate laughed as if Plaintiff's statement was a joke." *Id.* C/O McLean said, "'it's always something, Denton.'" *Id.* Denton descended the stairs handcuffed and unescorted "while exchanging heated words with Defendant McClean [who was on the first tier] and Defendant Benaag (Control Unit Officer) who was at the tower window ordering the Plaintiff to keep it moving on the tier." Docket # 1, p. 10. Denton tripped on the fifth step from the bottom of the staircase and fell down to the floor of the dayroom. He was momentarily knocked unconscious. When he regained consciousness, defendant McClean was leaning over him and asking if he was all right. Denton said he was not all right, and the medical staff was summoned. Medical staff examined him, put him in a neck brace and "transportation chains," and sent him on a gurney to the prison's emergency room. Docket # 1, pp. 10-11.

At the emergency room, Dr. Tuvera examined him, and ordered x-rays. X-rays were taken of his hand, back and knee area. Shortly thereafter, Dr. Tuvera informed Denton that his

1 x-rays were within normal limits. Denton complained of extreme pain, and Dr. Tuvera stated 2 that it was irritation due to the fall and that the inflammation would subside in due time. He was 3 discharged from the emergency room in a wheelchair when he was unable to walk due to back 4 and knee pain.

5 Denton sought and received additional care for his ongoing pain issues over the ensuing 6 months. He received a lower tier/bunk chrono for 30 days, and later a lower bunk chrono for 7 six months; was given several different kinds of pain medications for complaints of pain; had 8 additional x-rays of his lumbar spine; had blood tests; had physical therapy; and was provided 9 with an in-cell stretching program. As of the filing of the complaint in this action, however, 10 Denton continued to suffer from lower back pain and complications from the fall on March 29, 11 2012.

## DISCUSSION

14 A federal court must engage in a preliminary screening of any case in which a prisoner 15 seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 16 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss 17 any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, 18 or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b). 19 *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 20 696, 699 (9th Cir. 1990).

21 To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that 22 a right secured by the Constitution or laws of the United States was violated and (2) that the 23 violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 24 U.S. 42, 48 (1988).

25 The Eighth Amendment's prohibition of "cruel and unusual punishments" imposes a duty 26 on prison officials to, among other things, "'take reasonable measures to guarantee the safety of 27 the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 28 U.S. 517, 526-27 (1984)). A prison official violates the Eighth Amendment only when two

3

requirements are met: (1) the deprivation is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate safety. *See Farmer*, 511 U.S. at 834. The test for deliberate indifference is the same as criminal recklessness, i.e., the official must actually know of and disregard an excessive risk to inmate safety. *See id.* at 837. The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Neither negligence nor gross negligence constitutes deliberate indifference. *See id.* at 835-36 & n.4; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

  Even with liberal construction, the complaint does not state a claim for an Eighth Amendment violation. The objective prong of an Eighth Amendment claim is not satisfied. "[E]very injury suffered by an inmate does not necessarily translate into constitutional liability for prison officials." *Osolinski v. Kane*, 92 F.3d 934, 936-37 (9th Cir. 1996). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted); *see, e.g., Osolinski*, 92 F.3d at 938 (defendants entitled to qualified immunity against prisoner's Eighth Amendment claim stemming from second degree burns suffered when oven door fell off its hinges and burned his arms); *Jackson v. State of Arizona*, 885 F.2d 639, 641 (9th Cir. 1989) (slippery floors, by themselves, do not amount to cruel and unusual punishment); *Connolly v. County of Suffolk*, 533 F. Supp. 2d 236 (D. Mass. 2008) (summary judgment granted for defendants because ladderless bunk beds did not meet objective component of Eighth Amendment in light of evidence that "[t]housands of . . . inmates access bunk beds daily without the aid of a ladder and without incident" and only about a dozen injuries had been reported). Requiring an inmate to descend stairs while handcuffed behind his back does not deny him the minimal civilized measure of life's necessities. Outside of prison, large numbers of people regularly climb and descend stairs without falling, large numbers of people regularly climb and descend stairs without holding arm-rails, and large numbers of people regularly climb and descend stairs with their arms restricted (e.g., by holding packages, children, etc.) – all without falling. Prison officials requiring the handcuffed inmate to descend a flight

4

of stairs did not present an objectively serious condition required for an Eighth Amendment claim. Further, the allegations are very clear that Denton fell; he was not pushed and no one was even near him when he fell. Denton's allegation that the absence of an escort on the stairs was contrary to policy does not aid him because the policy requiring the officer to physically hold the inmate's arm was, by its own terms, to prevent a breach of security and not to prevent falls.

The Eighth Amendment claim also falters on the subjective prong because the allegations do not suggest that prison officials acted with deliberate indifference to a known risk to his safety. The alleged facts do not suggest that any of the correctional staff told him to descend the stairs unescorted with "knowledge of a substantial risk of serious harm" to him. *See Farmer*, 511 U.S. at 842. The allegations of the complaint indicate that those persons present did not perceive there to be a risk to him. When Denton mentioned he might fall because of his bad knee, C/O Bala laughed and said he was in better shape than Bala was, and the cellmate also "laughed as if Plaintiff's statement was a joke." Docket # 1, p. 9. Another guard made a comment that indicated that Denton always complained about something. These allegations indicate that the defendants and the cellmate did not perceive a genuine risk to his safety. Denton's allegations also indicate that *he* didn't perceive much of a risk because, rather than paying close attention to the task at hand, he descended while engaging in a yelling match with correctional staff.

An Eighth Amendment claim is not stated. Leave to amend will not be granted because the complaint well describes the incident, and it simply does not amount to deliberate indifference to a risk to the inmate's safety. This is not to say that the inmate was not hurt, as his allegations clearly indicate that he was hurt. Rather, as *Osolinski*, 92 F.3d at 936-37, observed, not every injury translates into constitutional liability for prison officials. This is such a case.

Denton may have a claim for negligence, but the court declines to exercise supplemental jurisdiction over the state law claim now that it has dismissed the federal constitutional claim that gave the court federal question jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Plaintiff may pursue his negligence claim in a state court action.

5

**CONCLUSION**

The complaint is dismissed without leave to amend because it fails to state a claim under § 1983 for a violation of plaintiff's Eighth Amendment rights. Having resolved the federal question claims, the court declines to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3). The dismissal of this action is without prejudice to plaintiff filing an action in state court to assert any state law claims he has. The clerk shall close the file.

IT IS SO ORDERED.

Dated: June 13, 2013

_____
SUSAN ILLSTON
United States District Judge